LORENZO D. DICKENS, Administrator of Sally Dickens, Res-
pondent, v. THE NEW YORK CENTRAL RAILROAD COMPANY,
Appellants.

Where the evidence on both sides is very close, and questions of recovery or
defeat before the jury, nicely balanced—there being no manifest error in con-
ducting the trial—it does not present a proper case for a court of review to
interfere.

The question of negligence may be answered by reference to a great variety of
incidents and circumstances proper for the jury to consider—and in respect to
which they may exercise a judicious discretion.

THE appeal in this case is by the defendants from a judg-
ment in favor of the plaintiffs, rendered in the sixth district.

The action was brought by the plaintiff as administrator
of Sally Dickens, his wife, under the statute, to recover dam-
ages resulting to her next of kin in consequence of her death,
which it is alleged was caused by the negligence of the
defendants.

The cause has been twice tried. The verdict rendered on
the first trial was set aside by this court. (23 N. Y., 158.)

The second trial was had before Mr. Justice BALCOM and a
jury at the Madison Circuit in December, 1852, and on the
trial the following facts were disclosed :

On the 29th of August, 1854, Sally Dickens, who was the
wife of the plaintiff, and resided in the county of Herkimer,
took passage in one of the defendant's cars at Little Falls for
Canastota. She was accompanied by her mother, Mrs. Kel-
ler, and neither of them had ever before that time taken or
left the cars at Canastota. They were on the mail train,
which consisted of three passenger cars. Mrs. Dickens and
her mother were seated in the middle car, on the south side
and about the middle of the car.

At Canastota there are two railroad tracks, about seven
feet apart. Passengers are received and discharged on the
north side of the road where a hotel and the office of the rail-
road company are located, but there is nothing to prevent
passengers from landing on either side of the tracks. The

mail train on this day was a little behind time, and arrived at Canastota on the most northerly track. As it was nearing Canastota an express train was also in sight coming from the west. The mail train on arriving at Canastota made a shorter stop than usual; the object of the managers of the train being to get away before the express train should arrive. It was a question, whether upon the arrival of the mail train at Canastota, the name of the station was announced in the middle car, and upon this the witnesses differed. But if the station was announced it was probably not heard by Mrs. Dickens and her mother. One of them inquired of a passenger who had entered the car whether the place was Canastota, and upon being informed that it was, left their seats and hastened to the west door of the car. She passed off on the south side of the car and was struck by the engine of the express train and instantly killed. The express train was then running at its usual speed of about 30 miles an hour.

The brakesman whose station was between the first and second passenger cars says, he knew the express train was coming, and *kept his station on the south side of the platform*, to prevent people from passing off on that side. Mrs. Dickens and her mother got off at that platform *on the south side*, and yet the brakeman says he first saw them on the *south track*. *He was looking to see the "Express."* The brakeman whose station was between the second and third cars also says "that he stood on the south side of the platform to keep the people from getting off on that side."

The conductor was in an unusual hurry. Before reaching Canastota he had only just stopped at other stations. At Canastota "the cars were stopped motionless not over a minute." One witness says "from thirty seconds to a minute." The defendant's flagman says: "I was so *flustrated* and confused I can't tell whether they stopped one or two minutes." Another witness says, "should not think they stopped a minute, if they did that." The conductor of the train says he stopped "from one and a half to two minutes" *and had not time to make provision for the safety of persons on the south side of his train.* He was engaged in

conversation with a music teacher who wanted some music purchased at Syracuse. He also says "if persons had been stationed at each platform for that object, they might have prevented persons getting off" and "that the stop at Canastota was a little shorter than the usual stop." And another witness for the defendants says, "the time of stopping there was a little shorter than usual."

At the time Mrs. Dickens and her mother got off, the train was in motion. One witness says, "the train had started with a slow motion." The fireman on the train says, "after we had gone the length of a car and a half or two cars, we heard the signal to stop." And this witness thought the train had gone the length of two cars before the women jumped off. The result proved that that motion was not sufficient to prevent their leaving with safety, and that they were not injured by leaving the car, but were killed by the express train, before they could get out of the way of it.

Mrs. Dickens had no children. Her father was dead and and her mother killed at the same time she was. She had two brothers living, both of them were men grown, and one sister who was aged thirty, and married and had children; another brother had previously died leaving two infant children. Mrs. Dickens was an active woman and in good health.

At the close of the plaintiff's case the defendants' counsel moved to dismiss the complaint on numerous grounds and this motion was denied and the defendants duly excepted.

At the close of the whole case, the counsel for the defendants asked the court to instruct the jury that upon the evidence the plaintiff was only entitled to recover nominal damages. This was refused and the defendants excepted.

The jury were instructed that to entitle the plaintiff to recover it must appear that the deceased was not guilty of any negligence which contributed to the injury.

That her only next of kin were her two brothers, one sister and two nephews or neices, and if the plaintiff recover, the amount recovered will be for the exclusive benefit of the next of kin. To this the defendants also excepted.

4

That the only damages the jury could give were such as the jury should deem a fair and just compensation, with reference to the pecuniary injuries resulting from the death of Mrs. Dickens to her next of kin, and whether more than nominal damages had resulted was a question for the jury. To this the defendants excepted.

The judge also charged that whether the next of kin would ever have been benefited pecuniarily by her living, was not certain, but speculative or matter of conjecture.

The counsel for defendants then requested the court to charge upon sundry propositions submitted, mainly the reverse of those which had been charged, and exceptions duly taken.

The jury found a verdict for the plaintiff for $500, and the General Term in the sixth district having refused a new trial judgment was entered on the verdict. From that judgment the defendants appealed to this court.

*John H. Reynolds,* for the plaintiff (respondent).

*Daniel Pratt,* for the defendants (appellants).

HOGEBOOM, J. This is one of those nicely balanced cases with which I think it is not proper for a court of review to interfere. Although the case appears to be a close one, both on the question of the negligence in the agents of the defendants, and the deceased whom the plaintiff represents, and the evidence is not very decided or controlling either way, yet I think there was enough to submit to the jury, and no legal error in leaving the question to them. As to the negligence of the defendants there were these facts for their consideration: the train was behind time; the stop at the station unusually short; the conductor and his subordinates in a hurry; some of them excited; some doubt whether notice of the station was given; an undue anxiety to leave before the express train arrived; a failure to adopt very decided precautions in keeping passengers from alighting on the south side of the track; some inattention to his duties on the part of the brakeman stationed between the cars to warn passen-

gers not to get out on that side; the conductor himself not occupied in the very vigorous discharge of his duties, but more pleasantly employed; and in general a lack of that close and careful attention which in circumstances rather perilous and critical like those which transpired on this occasion, is, to, say the least a matter of wise precaution, if not of the most imperative duty.

As to the negligence of the deceased, the degree of care and prudence devolving upon her is somewhat to be measured by the observance of proper precautions on the part of the defendants. If notice of the arrival at the station and the name of the station were not given, she was in a measure excusable for not knowing it, and of course for not acting seasonably upon such knowledge. If, as is known, the village which was the place of her destination was on the south side of the track, and she was so far a stranger as not to be likely to know that the passenger depot was on the north side, she does not seem to have been blameworthy in attempting to leave the cars on the south side. If her situation in the cars made it unlikely for her to know that an express train was approaching, and no person in fact notified her of the approach of such a train, it would not seem to have been an incautious act to get upon the south track. If she only learned the name of the station by inquiry from a fellow passenger without notification from the defendants, and the train did not stop long enough for a person receiving this tardy information to get off from the train before it was slightly in motion, after a stop unusually brief, it would not seem to have been necessarily such negligence as should defeat the action, for her to leave the train under such circumstances If the express and mail trains were not accustomed to meet at this point it was not negligence in her not to anticipate the arrival of the express train, and, of course, not to guard against it unless she was otherwise sufficiently and seasonably advised of its approach. The imputation of negligence in all these particulars depends very much upon the observance of all proper precautions on the part of the defendants, and if the

jury were warranted in finding against them upon the primary question of negligence on their part, as perhaps they did in all these particulars, I do not think we are in a situation to say that there was legal error in submitting the question of the plaintiff's, as well as the defendants', negligence to the jury. This question of negligence depends ordinarily upon so many minute circumstances, and is governed so much by the facts of each particular case, that it is very difficult to lay down any safe or practical general rule on the question what constitutes it, and it is well said that the evidence of it, should be clear and decisive, to impute legal error to a judge who submits it under conflicting facts to the determination of a jury.

In regard to the rule of damages, I think the charge of the judge was in conformity to the statute and sufficiently guarded and limited in reference to the facts of the case. He appears to have been strictly within the limit of the rule recently laid down in this court, after much consideration and two successful arguments, in the case of *Tilly* v. *the Hudson River Railroad Company.* I think the defendants cannot successfully assail the charge on this point unless it is a case for limiting the plaintiff to nominal damages. We are not at liberty to lay down any such restricted rule, without violating the statute and the current of former decisions. We have frequently had occasion to say that the statute was not very precise in its terms, nor susceptible of a very clear and exact construction, but we regard it as obvious that from its scope and tenor, some latitude must be allowed to the careful discretion of a jury, in assessing the damages of each particular case. It may be, and is, probably, true, that this power is sometimes abused, but the correction is not with this court. It is not always easy to see how the death of a particular individual, and she a wife, will operate to the pecuniary prejudice of collateral relatives, and if so, to what extent. But as the law does not require direct and precise proof on this subject, and has committed to the jury a liberal discretion in its actual disposition, we cannot say, in view of the not very extravagant sum assessed by the jury in this particular case,

if any sum whatever were to be allowed, that any principle of law has been violated.

The judgment of the court below must be affirmed.

All affirm except DAVIES, J., who is for reversal. SELDEN, J., does not vote.

<div align="center">

JOEL TIFFANY, *State Reporter.*